UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
YOU QING WANG,

Plaintiff,

- against -

XBB, INC. and MEI LAN CHEN,

Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-7341 (PKC) (ST)

PAMELA K. CHEN, United States District Judge:

On December 25, 2018, Plaintiff You Qing Wang initiated this lawsuit, alleging various violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (Compl., Dkt. 1, ¶¶ 46–89.) Following a bench trial held from August 16 to August 17, 2021, the Court issued its findings of facts and conclusions of law, awarding $83,725.27 in damages for Plaintiff. *See Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *15 (E.D.N.Y. Mar. 29, 2022). Presently before the Court is Plaintiff's motion for attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and N.Y. Lab. Law §§ 198(1-a), 663(1). (Plaintiff's Motion for Attorneys' Fees & Costs, Dkt. 58.) Plaintiff requests $81,929.50 in attorneys' fees and $5,314.55 in costs. (*See* Declaration of John Troy ("Troy Decl."), Dkt. 59, ¶ 58.) For the reasons set forth below, the Court finds that Plaintiff's counsel is entitled to **$20,856.60** in attorneys' fees and **$400** in costs.

## BACKGROUND[1]

Defendant Mei Lan Chen is the owner and operator of a clothing store called "XBB," or "Xiong Bao Bao." *See Wang*, 2022 WL 912592, at *1. Defendant Chen operated XBB as a sole proprietorship from about June 2013 to May 25, 2017, when she incorporated XBB. *Id.*

The Court held a bench trial in August 2021 to resolve Plaintiff's claims and Defendants' partial defense under the "faithless employee" doctrine. Based on the evidence adduced at trial, the Court made the following findings by a preponderance of the evidence: Plaintiff worked six days per week for XBB from June 29, 2013 through September 30, 2017; that Defendants failed to pay the full minimum wage and overtime rates required by the FLSA and NYLL; and that Plaintiff acted as a "faithless employee," when she stole about $3,000 from Defendants over the last six months of her employment. *Id.* at *1, 10. Accordingly, the Court calculated that Plaintiff is entitled to a net total of $83,725.27 in damages for wage violations, prejudgment interest, and liquidated damages, after accounting for the $3,000 she stole from Defendants. *Id.* at *15.

Presently, Plaintiff seeks $81,929.50 in attorneys' fees for 204.86 hours of work performed by five employees of Troy Law, and $5,314.55 in costs. (Troy Decl., Dkt. 59, at 26.) In response, Defendants ask that the Court deny Plaintiff's entire application for fees and costs, contending that Troy Law's time entries "are generally very unreasonable, excessive, and probably fraudulent at least to some degree." (Defendants' Memorandum in Opposition ("Defs. Opp."), Dkt. 65, at 7.) In fact, Defendants request that the Court "make a finding as to[] (1) whether Mr. John Troy's motion for attorney's fee[s] is fraudulent, and (2) whether such fraud has repeatedly occurred in New York federal courts." (*See* Defendants' Letter to the Court, dated May 15, 2022 ("Defs.

---

[1] The facts of this case have been set forth in detail in prior opinions in this litigation, most recently in the Findings of Facts and Conclusions of Law issued after the bench trial. *See Wang*, 2022 WL 912592, at *1–3. The Court will recount only those facts found after the bench trial that are necessary to resolve the instant motion for attorneys' fees and costs.

Letter"), Dkt. 68.) Defendants further request "an award for attorney's fees incurred by Defendants to combat the fraud on the court." (Defs. Opp., Dkt. 65, at 10.) Specifically, Defendants reiterate an allegation made prior to trial that Plaintiff's counsel *unilaterally* edited the Joint Pretrial Order, even though that document was supposed to reflect the parties' agreement on several issues prior to trial. (*Id.*)

**DISCUSSION**

**I. Applicable Legal Standards**

The FLSA and NYLL authorize courts to award a prevailing plaintiff reasonable attorneys' fees and costs. *See Griffin v. Astro Moving & Storage Co.*, No. 11-CV-1844 (MKB), 2015 WL 1476415, at *6 (E.D.N.Y. Mar. 31, 2015); *see* 29 U.S.C. § 216(b) ("The court in [a FLSA] action shall . . . allow a reasonable attorney's fee to be paid by the defendant[s], and costs of the action."); N.Y. Labor Law 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee [under the NYLL] in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney's fees.").

In the Second Circuit, the "starting point" in analyzing whether an application for attorneys' fees is appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case[.]" *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (explaining that the lodestar calculation creates a "presumptively reasonable fee") (citations omitted). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166 (TCP) (WDW), 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). Reasonable hourly rates are informed in part by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (internal quotation marks and citations omitted). A district court should "bear in mind all of the case-specific variables that [the court] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis omitted). To determine the reasonable hourly rates in the district in which its sit, a court may need to take "judicial notice of the rates awarded in prior cases" and rely on "the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005). A presumptively reasonable attorney's fee "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted).

The fee applicant "bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done, the hours, and the dates." *Fundora v. 87-10 51st Ave. Owners Corp.*, No. 13-CV-738 (JO), 2015 WL 729736, at *1 (E.D.N.Y. Feb. 19, 2015); *see also Ehrlich v. Royal Oak Fin. Servs., Inc.*, No. 12-CV-3551 (BMC), 2012 WL 5438942, at *8 (E.D.N.Y. Nov. 7, 2012) ("The burden is on the party moving for attorneys' fees to justify the hourly rate sought.") (citation omitted). "In determining the numbers of hours reasonably expended for purposes of calculating the lodestars, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–35, 440 (1983)).

## II. Analysis

Plaintiff seeks $81,929.50 in attorneys' fees for the 204.86 hours of work performed by five employees of Troy Law in the course of this litigation. (*See* Troy Decl., Dkt. 59, ¶ 58.) The Court considers the reasonableness of each component of the fee request in turn.

### A. Reasonableness of Hourly Rates

"The reasonable hourly rate is the rate a paying client would be willing to pay bearing in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lily v. City of New York*, 934 F.3d 222, 231 (2d Cir. 2019) (cleaned up). Upon careful consideration of the fees application, the Court finds that the billing rates that Plaintiff has requested exceed the rates awarded in this District in light of each timekeeper's level of experience and the tasks that he or she performed.

#### 1. John Troy

John Troy seeks an hourly rate of $650. In the declaration he submitted as part of his fee application, Troy states that he received an LLM degree from Dickinson Law School in 1985, and was admitted to the New York State Bar in 1989. (Troy Decl., Dkt. 59, ¶ 14.) Troy claims that Troy Law is "one of the largest firms in [terms of] case load in the nation[] [for] Fair Labor Standards Act wage-and-hour litigation."[2] (*Id.* ¶¶ 14, 17.)

Although Troy indicates that he is attorney of record on hundreds of wage-and-hour cases, he only cites three instances in which he received hourly rates of at least $550 per hour, and one instance of receiving $500 per hour. (Troy Decl., Dkt. 59, ¶ 23.) However, in two of those cases, Troy was awarded higher rates in the context of default judgments, where Troy Law's fees

[2] Troy provides no support for this claim. The Court also questions how such a claim could be substantiated.

applications were unopposed. *See Hu v. 226 Wild Ginger Inc.*, No. 17-CV-10161 (JGK) (KNF), 2020 WL 6324090, at *8 (S.D.N.Y. Oct. 7, 2020) (granting unopposed fees award in default judgment), *report and recommendation adopted*, 2020 WL 6324088 (Oct. 27, 2020); *Zhang v. Chongqing Liuyishou Gourmet NJ Inc.*, No. 18-CV-10359 (CCC), 2019 WL 6318341, at *4 (D.N.J. Nov. 26, 2019) (awarding $550 hourly rate for Troy because he received that amount in other "FLSA cases with similar circumstances," and citing only default judgment cases). The Court is also troubled by Troy's citation to a third case, *Lianhua Weng v. Kung Fu Little Steamed Buns*, No. 17-CV-2273 (LAP), in which Troy claims that he was awarded a $550 hourly rate. *See* 2021 WL 2043399, at *2 (S.D.N.Y. May 21, 2021). Yet, Troy's claim, literally, tells only half the story. The presiding judge in that case determined that Troy's time records "reflect not only partner-level work, but also associate- and even paralegal-level work," and accordingly, awarded Mr. Troy $550 for half of his billed time, and $300 per hour for the other half. *See id.* Thus, Troy's reliance on *Kung Fu Little Steamed Buns* to justify a rate of $650 per hour is misleading—given the significant reduction in the overall fees the court awarded—and does not convince this Court that Mr. Troy's performance in this case warrants an hourly rate of $550.

In addition, Mr. Troy claims he received a $500 hourly rate in an arbitration case. (Troy Decl., Dkt. 59, ¶ 23.) Because arbitration proceedings are not a matter of public record, this Court cannot ascertain the circumstances around that dispute, which it must since Mr. Troy has a documented history of inflating his hourly rates.[3] In sum, among the hundreds of wage-and-labor cases for which he has served as an attorney, Mr. Troy has not identified a single *comparable* case

[3] As another court recently observed, "[a] treatise worth of case law has emerged about the rates and hours that Troy Law has requested. And courts have balked at the sort of rates requested in this case," finding the high rates requested by Troy Law to be "'unreasonable[,] given the firm's skill and experience." *See Garcia v. Francis Gen. Constr. Inc.*, No. 20-CV-4323 (JPC), 2022 WL 2698434, at *7 (S.D.N.Y. July 12, 2022) (cleaned up and citing cases).

in which he was awarded more than $400 per hour. Indeed, several courts have specifically awarded Mr. Troy between $300 and $400 per hour. *See, e.g.*, *Xin v. 1A Royal Thai Cuisine & 1A Anago Sushi Inc.*, No. 17-CV-10240 (GHW), slip op. at 1 (S.D.N.Y. June 3, 2019) (awarding Mr. Troy $300 per hour); *Guo v. Tommy's Sushi, Inc.*, No. 14 Civ. 3964 (PAE), 2016 WL 452319, at *5 (S.D.N.Y. Feb. 5, 2016) (same); *see also Hui Luo v. L & S Acupuncture, P.C.*, No. 14-CV-1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015) (noting that it is "well established, and should remain so unless there is a significant change in the market for legal services in this area, that the prevailing hourly rate for partners in this district ranges from $300.00 to $400.00") (cleaned up).[4]

As noted, Troy now requests $650 per hour for his work in this case. (Troy Decl., Dkt. 59, ¶ 24.) His only explanation for this steep increase is that "just as New York State minimum wage has increased from $8.00 to $15.00 for New York City employers with ten or more employees (an 87.5% increase) over the past five years, the prevailing market rates and caps for partners/associates representing clients in wage-and-hour case in the Second Circuit has increased as well." (Plaintiff's Mem. Law Supp. Mot. Attorneys' Fees & Costs ("Pl. Mem."), Dkt. 60, at 4.) The Court rejects Troy's suggestion that there has been an increase in the prevailing rates for experienced wage-and-hour attorneys since the end of 2018, which is when the minimum wage for New York *City*—not New York State—was raised to $15. *Compare L & S Acupuncture, P.C.*, 2015 WL 1954468, at *2 (noting in 2015 that the prevailing rate for partners was $300 to $400 per hour) *with Rodpracha v. Pongsri Thai Rest. Corp.*, No. 14-CV-2451 (DF), 2021 WL 6205861, at *2 (S.D.N.Y. Dec. 29, 2021) (holding in 2021 that in the Southern District, "courts generally award

---

[4] Notably, the work performed by Troy in the present case started in November 2018 and concluded in May 2019. (*See* Invoice, Dkt. 59-1, at 1–3.)

experienced wage-and-hour attorneys between $300 and $400 per hour," and citing cases from 2019 or later). Troy cites only to a decision from this District in *Sajvin v. Singh Farm Corp.* in support of this proposition, a case in which the partner received a $500 hourly rate, and the associate received a $250 hourly rate. (Pl. Mem., Dkt. 60, at 4.) However, the Court in *Singh Farm Corp* explained that the partner in that particular case—who was not Troy—should receive $500 per hour because of his "experience, expertise and reputation in this District." *See Sajvin v. Singh Farm Corp*, No. 17-CV-4032 (AMD) (RER), 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018), *report and recommendation adopted*, 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018). As discussed further below, the Court finds that neither Troy's reputation generally, nor his firm's performance in this particular case, warrants similarly high hourly rates.

Furthermore, to the extent that Troy is arguing that there *should be* an increase in attorneys' fees for wage-and-hour cases because the minimum wage was also increased, the Court thoroughly rejects that proposition. Other courts have rejected this comparison between Troy Law and its clients, explaining that "the increase in the minimum wage for covered hourly workers has nothing to do with hourly rates for lawyers[.]" *See Chen v. Asian Terrace Rest., Inc.*, 507 F. Supp. 3d 430, 435 (E.D.N.Y. 2020); *Lu Wan v. YWL USA Inc.*, No. 18-CV-10334 (CS), 2021 WL 1905036, at *5 (S.D.N.Y. May 12, 2021). Increasing the minimum wage paid to the least compensated members of the workforce—so that they can attempt to earn a living wage—does not justify increasing fees to attorneys who are already well-compensated for their work and who are not struggling simply to survive. Indeed, it is almost nonsensical, if not offensive, to argue that an overdue increase in the minimum wage, which was the result of legislative action, should trigger an increase in fees for attorneys, who operate in "a market [for rates] that is almost entirely unregulated." *See Asian Terrace*, 507 F. Supp. 3d at 435. That is why the proper measure of an

attorney's hourly rate is what a reasonable client, who wants to spend as little as possible, is willing to pay for that lawyer's services.

Accordingly, the Court finds that consistent with the prevailing rates in this District for experienced wage-and-hour attorneys, an hourly rate of $400 is warranted for Mr. Troy.

2. Aaron Schweitzer

Troy Law seeks either an hourly rate of $350 or $400 for Aaron Schweitzer. According to Troy's Declaration, Schweitzer is "the managing associate at Troy Law," and graduated from Fordham University Law School in 2016. (Troy Decl., Dkt. 59, ¶¶ 25–26.) He was admitted to practice in New Jersey in November 2017, and in New York in May 2018. (*Id.* ¶ 27.) Troy acknowledges that at the time of this motion for fees Schweitzer had about 4 years of legal experience. (*Id.* ¶ 29.) Confusingly, Troy initially requests an hourly rate of $350 for Schweitzer in the Troy Declaration (*see id.* ¶ 33), but several pages later, he asks the Court for a $400 per hour for Schweitzer's work (*see id.* ¶¶ 39, 56).

The Court declines to award the requested rate for Schweitzer—whether that is $350 or $400 per hour—for many of the same reasons it declined to award Troy's requested rate. In his Declaration, Troy asserts that Schweitzer was previously awarded $350 an hour in three recent cases: *Wild Ginger*, *Chongqing Liuyishou Gourmet*, and *Kung Fu Little Steamed Buns*. As explained above, *Wild Ginger* and *Chongqing Liuyishou Gourmet* are inapposite because these cases involved unopposed fees applications in default judgments. *Kung Fu Little Steamed Buns* is also unhelpful to this Court's determination of a reasonable rate for Schweitzer because that decision skipped an analysis of the lodestar rate, and instead relied in large part on the rates awarded in *Wild Ginger*. *See Kung Fu Little Steamed Buns*, 2021 WL 2043399, at *2 ("The Court will adopt the rates awarded by [the] Judge [] in *Wild Ginger* for the reasons noted therein.").

Instead, courts within this Circuit typically award "a reasonable hourly rate for a senior associate rang[ing] from $200 to $300," while "[j]unior associates generally command $100 to $150 dollars per hour." *See L & S Acupuncture*, 2015 WL 1954468, at *2; *see also Tommy's Sushi*, 2016 WL 452319, at *5 (collecting cases in the Southern District in which attorneys in their first three to five years of practice generally received less than $200 per hour).

While Troy Law may refer to Schweitzer as a "managing associate," he was a junior associate for purposes of determining the lodestar for his work on a wage-and-hour case. Because Schweitzer was admitted to practice in 2017, and his last time entry was in December 2021, all his work in this case was within his first four years of practice. In fact, in *Rodpracha v. Pongsri Thai Rest. Corp.*, which is another case involving Troy Law, the district court distinguished junior associates from "mid-level associates" who it defined as attorneys with "at least four years of experience," and ultimately awarded $150 per hour for Schweitzer's time because he was an associate within the first four years of practice and because his work product was "repeatedly rejected" by the court for being "internally inconsistent and containing errors of fact and law." *See* 2021 WL 6205861 at *3. Here, because the Court did not find any flagrant errors in his work, the Court will award Troy Law $200 per hour for Schweitzer's billed time.

3. Tiffany Troy

Troy requests a $200 hourly rate for the time billed by Tiffany Troy, who is currently an Associate at Troy Law. Troy's Declaration notes that Ms. Troy graduated *cum laude* from Fordham University Law School, and lists all the courts in which she is admitted to practice. (Troy Decl., Dkt. 59, ¶¶ 41, 43.)

However, her legal qualifications are irrelevant here because the time records submitted by Troy Law indicate that Ms. Troy's billed time for this case was exclusively for translation services,

not for legal work. (*See* Invoice of Troy Law ("Invoice"), Dkt. 59-1, at 3 (time entries for 4/2/2019, 5/2/2019, and 5/3/2019 for translation or interpretation); *id.* at 4 (time entries for 7/1/2019 for translation).) However, "interpreting services are distinct from legal services and are not awarded as a component of attorney's fees." *Szczepanek v. Dabek*, No. 10-CV-2459 (SJF) (ARL), 2011 WL 846193, at *8 (E.D.N.Y. Mar. 7, 2011); *see also Ruo Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667 (PAE), 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015) (in a case involving Troy Law, declining to award fees for hours in which attorneys engaged in translation work because "[t]ranslation . . . is not legal work"). Indeed, Troy Law's request to compensate Ms. Troy as an attorney for performing non-legal work is misleading, if not dishonest and unethical. The Court is again troubled by Troy Law's efforts to inappropriately inflate their attorneys' fees.[5] Accordingly, the Court will not award any fees for Ms. Troy, because all of her time entries were for translation or interpretation work.

4. Adam Dong

As to Adam Xing Dong, who according to Troy, was an associate for his firm, Troy Law requests an hourly rate of $200 per hour. (*Id.* ¶¶ 50, 52.)[6] Dong is a 2018 graduate of Brooklyn

[5] Troy's Declaration also claims that Ms. Troy has interpreted in several federal and state court cases, including in "14-cv-02451-*ER*[,] *Rodpracha et al v. Pongsri Thai Restaurant Corp et al.* (Mandarin to English; English to Mandarin)." (*See* Troy Decl., Dkt. 59, ¶ 44.) However, the court in that case stated that "there is no indication that [Tiffany Troy] ever performed interpreting services in this case, and in fact, the only references to interpreter services contained in the submitted records are references to Thai interpreters." *See Pongsri Thai*, 2021 WL 6205861, at *4 n.4 (S.D.N.Y. Dec. 29, 2021). Therefore, Troy's statement that Ms. Troy translated between Mandarin Chinese and English in *Pongsri Thai* is clearly false, and Mr. Troy is admonished for including a false statement in the Troy Declaration which he made under penalty of perjury. (*See* Troy Decl., Dkt. 59, ¶ 59.)

[6] At the $200 hourly rate requested for Dong, the total amount of attorney's fees for Dong's 12.99 hours of billed work should be $2598. However, Troy Law requests $3897 for Dong's work, which would be an hourly rate of $300. (*See* Troy Decl., Dkt. 59, ¶ 56.) As the Court explains, an hourly rate of $100 is appropriate for Dong's work in this case.

Law School, and was admitted to the New York State Bar on October 16, 2019. (*Id.* ¶ 50.) Troy's affirmation does not indicate that Dong was barred in any other state during the relevant time period. (*Id.*)

Billing records submitted by Troy Law indicate that all of Dong's work for this case was conducted prior to his admission in October 2019 to the New York bar. (*See* Invoice, Dkt. 59-1, at 4 (time entries for 7/2/2019 and 7/3/2019); *id.* at 5 (time entries for 7/5/2019 and 8/6/2019).) Since Dong was not yet admitted to practice law, the Court finds that no reasonable paying client would be willing to pay an hourly rate of $200 for Dong's billed time. Instead, the Court finds that an hourly rate of $100 is appropriate for Dong's work as a recent law school graduate who had yet to be admitted to the bar. *See Yuajian Lin v. La Vie En Schezuan Restaurant Corp.*, No. 15-CV-9507 (DF), 2020 WL 1819941, at *6 (S.D.N.Y. Apr. 9. 2020) ("[I]t is commonly understood in the legal community that attorneys who are not members of the bar command a lower rate than those who are[.]"). As Troy Law knows, courts in this Circuit have consistently awarded $100 per hour or less for work performed by unadmitted lawyers in wage-and-hour cases. *See id.* (denying requested $200 hourly rate for law clerk employed by Troy Law who was not yet admitted to any bar, in favor of $80 per hour); *Tommy's Sushi*, 2016 WL 452319, at *5 (awarding $100 hourly rate for an intern in a fees application by Troy Law, and collecting similar cases); *Pongsri Thai*, 2021 WL 6205861, at *4 (in another case involving Troy Law, awarding $100 hourly rate for work at the level of "a paralegal or clerk (*i.e.*, an unadmitted attorney)"). Accordingly, the Court finds an hourly rate of $100 to be appropriate for hours billed by Dong.

5. <u>Preethi Kilaru</u>

Troy Law seeks an hourly rate of $200 for Preethi Kilaru. Troy's Declaration states that Kilaru received an LLM degree from SMU Dedman School of Law in 2017, and graduated from

Karnataka State Law University CMR Law School. (*Id.* ¶ 53.) Although Troy does not indicate Kilaru's role on Plaintiff's legal team, the time entries for Kilaru indicate that she was not acting as a lawyer on behalf of Plaintiff.[7] Yet, Troy requests a $200 hourly rate for Kilaru, citing similar rates for her work in *Wild Ginger*, *Kung Fu Little Steamed Buns,* and *Chongqing Liuyishou Gourmet*—all cases that the Court has already explained are readily distinguishable. (Troy Decl., Dkt. 59, ¶ 55). Instead, the Court notes that employees who perform the types of tasks that Kilaru handled in this case are often awarded an hourly rate of $100 or less, and courts, in fact, have awarded a $100 hourly rate for similar work performed by Kilaru in other cases. *See Pongsri Thai*, 2021 WL 6205861, at *4 ("$100/hr is a reasonable rate for the work performed on this matter by office manager Perrthi [sic] Kilaru."); *YWL USA Inc.*, 2021 WL 1905036, at *4 (rejecting Troy Law's application for $200 per hour for Kilaru, and instead awarding $75 per hour for her work). This is yet another troubling instance of Troy Law attempting to improperly inflate its attorneys' fees request. In light of the rates awarded within this Circuit, the Court finds that $75 per hour is a reasonable rate for Kilaru's billed time.

---

[7] *See e.g.*, Invoice, Dkt. 59-1, at 1 (setting up communications channels with client and creating binders); *id.* at 2 (scanning documents, printing and mailing copies to opposing counsel, arranging for service of documents). In fact, Troy Law's website lists Kilaru as its "Office Manager." *See* Troy Law, *Preethi Kilaru*, available at https://troypllc.com/en/team-2/preethi-kilaru/, (last visited on March 22, 2023). Because courts in the Second Circuit have regularly taken judicial notice of what year an attorney graduated from law school from their law firm's website when determining the appropriate fees to award for that attorney's work, when such information was not provided in the fees application, *see, e.g.*, *LeChase Construction Servs., LLC v. Escobar Constr.Inc.*, No. 18-CV-1021 (GTS/ML), 2021 WL 74080, at *5 (N.D.N.Y. Jan. 8, 2021); *Lee v. Grand Sichuan Eastern (N.Y.) Inc.*, No. 12-CV-8652, 2014 WL 199512, at *5 (S.D.N.Y. Jan. 17, 2014), the Court finds that it can take judicial notice of Kilaru's position at Troy Law for the purposes of determining whether she was acting as a lawyer for Plaintiff in this case.

**B. Reasonableness of Number of Hours Expended**

"District courts reviewing fee petitions must exclude hours that are excessive, redundant, or otherwise unnecessary, allowing only those hours that are reasonably expended." *Hernandez v. Berlin Newington Assocs., LLC*, 699 F. App'x 96, 97 (2d Cir. 2017) (cleaned up). Within this Circuit, "[district] courts have applied percentage reductions to hours worked on a simple legal question, block billings, hours worked for limited success at trial, vague or inconsistent time entries, and unnecessary or inefficient hours worked." *Mango v. Buzzfeed Inc.*, 397 F. Supp. 3d 368, 374–75 (S.D.N.Y. 2019) (cleaned up) (collecting cases). In addition, this Court "ha[s] the legal authority and discretion to either reduce an attorney's hourly rate for time spent on clerical tasks or [to] apply an across-the-board reduction to the hours billed or total fee award to account for time spent on clerical tasks." *YWL USA Inc.*, 2021 WL 1905036, at *7 (citation omitted).

The time entries submitted by Troy Law reflect inefficiencies and excessive billing practices that justify further reduction of the requested fee award. As an initial matter, the Court agrees with Defendants that John Troy's time entries researching Defendants in various databases reflect tasks that are at best not appropriate for a partner to engage in, and arguably completely irrelevant to a case involving a clothing store. (*See* Defs. Opp., Dkt. 65, at 3.) "Although [] Troy is at liberty to decide how to use his time and manage his cases," the Court finds that "it is not appropriate, for purposes of gauging the reasonable fee award, to assign partner-level billing rates to tasks that first- or second-year associate[s] [or, here, a non-lawyer] could easily perform." *Lin Kumo*, 2015 WL 5122530 at *2.

Other excessive billing practices include Troy spending 3.5 hours to "File the Complaint, Summons & Civil Cover Sheet," especially in light of the fact that Troy billed 0.9 hours that same day to "Finalize the Complaint" and 0.8 hours also on that day to "Review the Complaint." (*See*

Invoice, Dkt. 59-1, at 1–2 (time entries for 12/26/18).) Similarly, the Court finds it troubling that Troy—who touts his vast experience in litigating wage-and-hour cases—billed 2.1 hours to review Defendants' *pro forma* Answer. (*Id.* at 2 (time entry for 1/26/19)); *see also Tommy's Sushi*, 2016 WL 452319, at *7 (critiquing Troy for a similar 2.2-hour time entry for reviewing "defendants' one-sentence Rule 7.1 statement and 14-page *pro forma* Answer").[8]

In addition to excessive billing, the Court noticed instance of repetitive billing practices, such as two different time entries on January 11, 2019, for the same task. (*See* Invoice, Dkt. 59-1, at 2 (time entries on 1/11/19 for 0.25 and 0.2 hours for "Initial Contact" with opposing counsel).) Similar inefficiencies and inconsistencies existed in time entries for other employees at Troy Law; for example, Schweitzer's time entries include two identical entries of 0.2 hours on February 21, 2019, simply for filing a Notice of Appearance. (*See* Invoice, Dkt. 59-1, at 2 (time entries for 2/21/2019).) To account for Troy Law's haphazard billing practices, and after considering

[8] Troy Law also attempts to justify its requested rates by touting its performance in this litigation, arguing that it "achieved excellent results on behalf of [its] client, especially in light of how vigorously this action was fought by Defendants." (Pls. Rep. Mem., Dkt. 67, at 7.) The Court disagrees because it found Plaintiff's counsel's performance in this case to be lacking in key respects. For example, Plaintiff filed a motion *in limine* to preclude testimony of several defense witnesses on the basis that they had failed to appear for depositions. (*See* Plaintiff's motion in limine, Dkt. 50, at 1.) The Court summarily denied this motion because Plaintiff's counsel failed to move to compel testimony from these potential witnesses well before trial. (*See* Order, Dkt. 52, at 3.) In fact, Troy Law could have avoided a round of unnecessary motion practice if it had used all the tools available to it in discovery, but Troy Law instead "did nothing in response to the Court's" order that reopened discovery specifically so that Plaintiff could secure deposition testimony. (*Id.*)

Another issue that arose at trial was Plaintiff testifying in a manner that directly contradicted her deposition testimony. *See Wang*, 2022 WL 912592, at *11. In fact, at trial, the Court noted on the record that it found "much of Plaintiff's testimony [] not believable." *See id.* The Court views Plaintiff's ineffective and inaccurate testimony as partly attributable to Troy Law's failure and/or inability to properly prepare its client for trial.

reductions that other courts have applied in similar cases,[9] including several cases litigated by Troy Law, the Court reduces the hours billed by Troy Law by 40%.

**C. Defendants' Request for Finding of Fraud Perpetrated by Plaintiff's Counsel**

Finally, the Court denies Defendants' request for a factual finding as to whether Troy Law has made a fraudulent motion for attorney's fees in this case, and moreover, "whether such fraud has repeatedly occurred in New York federal courts." (Defs. Letter, Dkt. 68, at 2.) Defendants' request is based on (1) an "error" made by Troy Law in the Joint Pretrial Order, which omitted Defendant Chen as a witness at trial, and (2) Troy Law's general billing practices. (*See generally* Defs. Opp., Dkt. 65; Defs. Letter, Dkt. 68.) Although Defendants cite no rule or case law in support of their motion, the Court "may exercise its inherent power to sanction a party or attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Abreu v. Receivable Collection Servs. LLC*, No. 18-CV-4103 (PKC) (LB), 2019 WL 1876722, at *2 (E.D.N.Y. Apr. 26, 2019) (quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)). To impose sanctions based on bad faith, the Court must make specific factual findings, *see Eisemann v. Greene*, 204 F.3d 393, 396–97 (2d Cir. 2000), and "general inferences of bad faith are disfavored by courts in this Circuit," *see Gissendaner v. Credit Corp. Solutions, Inc.*, 358 F. Supp. 3d 213, 224 (W.D.N.Y. 2019); *see also Scrilla Hill Entm't Inc. v. Dupree*, No. 16-CV-490 (JMF), 2016 WL 5817064, at *4 (S.D.N.Y. Oct. 5, 2016) (explaining that in the context of sanctions, "the Second Circuit

---

[9] *See, e.g.*, *Tommy's Sushi*, 2016 WL 452319, at *7 (reducing hours billed by Troy Law by 40% for similar billing inefficiencies); *YWL USA Inc.*, 2021 WL 1905036, at *7 (finding that "40% of the total hours billed by John Troy, Schweitzer . . . and Kilaru should be trimmed as excessive or otherwise unnecessary"); *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR) (JO), 2020 WL 4783399, at *8 (E.D.N.Y. Aug. 18, 2020) (applying a 40% across-the-board reduction because Troy Law's billing records are vague, redundant, and reflect overstaffing); *see also Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656 (S.D.N.Y. 2019) ("Courts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended.").

demands 'a high degree of specificity in the factual findings' of the district court") (quoting *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)).

Here, the Court finds that Defendants have put forth insufficient evidence for meeting this high standard that Troy Law acted in bad faith when preparing the Joint Pretrial Order. Instead, the Court will deduct the one hour of time that Schweitzer billed on January 13, 2021, to "Revise [the] JPTO" because the revisions were necessitated in part by Troy Law's errors in drafting the initial JPTO. (*See* Invoice, Dkt. 59-1, at 6.)

The Court also declines Defendants' request to impose sanctions on Troy Law based on its inclusion of multiple, duplicative billing entries that are identical to the "multiple time entries" submitted by Troy in *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR) (JO). (Defs. Letter, Dkt. 68, at 2; *see also* Defs. Opp., Dkt. 65, at 2–3.) Troy Law explains these identical time entries by noting that its client meeting and asset search is part of its standard practices whenever it starts a case. (Plaintiff's Reply Memorandum of Law, Dkt. 67, at 9.) Although the Court agrees that Troy should write off this time or delegate to junior lawyers, the Court again finds that Defendants have not met the high burden to show based only on these recurring standard entries that Plaintiff's counsel has acted in "bad faith" or engaged in conduct that warrants further sanctions.

However, the Court warns Troy Law that, based on its blatant attempts to improperly inflate its attorneys' fees request—by seeking attorneys' fees for non-legal work, *e.g.*, the work done by Ms. Troy and Kilaru, and seeking patently unjustified hourly rates, *e.g.*, Troy, Schweitzer, and Dong—the Court came close to sanctioning Troy Law, and will do so in the future, should Troy Law repeat these practices before this Court. Indeed, the Court notes that Troy Law has been reprimanded numerous times for its billing practices, and some courts have specifically noted that

further infractions could lead to sanctions. *See Shanghai Original, Inc.*, 2020 WL 4783399, at *10 (E.D.N.Y. Aug. 18, 2020) (declining to impose sanctions but "not discount[ing] the possibility of disciplinary sanctions in the future" if Troy continues to engage in conduct such as "obfuscating case citations to mislead the court"). Troy Law would be well-advised to clean up its billing and fee request practices.

**D. Calculation of Proper Fee Award**

Based on the foregoing reductions, the Courts awards Plaintiff $20,856.60 in attorneys' fees, calculated as follows:

| Timekeeper | Adjusted Hourly Rate | Hours Billed | Total Fees |
|---|---|---|---|
| John Troy | $400 | 26 | $10,400 |
| Aaron Schweitzer | $200 | 104.48 | $20,896 |
| Adam Dong | $100 | 12.99 | $1,299 |
| Tiffany Troy | $0 | 16.26 | $0 |
| Preethi Kilaru | $75 | 28.88 | $2,166 |
| **Total** | | | **$34,761.00** |
| **Less 40% Across-the-Board Reduction** | | | **$20,856.60** |

**E. Costs**

Plaintiff also requests $5,314.55 in total costs for the filing fee, service processor fees, postage, printing costs, interpretation costs, and other costs related to depositions, mediation, and trial. (*See* Invoice, Dkt. 59-1, at 8.) Under both the FLSA and NYLL, a successful plaintiff may recover reasonable costs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *see also Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. 09-CV-486 (ETB), 2012 WL 5305694, at *9 (E.D.N.Y. Oct. 9, 2012) ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses.").

However, a "fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *YWL USA Inc.*, 2021 WL 1905036, at *9 (quoting *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)). Although a court can take judicial notice of the filing fee within its own district, "the Court cannot simply accept at face value the other costs that plaintiff's counsel seeks, such as service of process and translator services, without additional supporting documentation for those costs." *See Piedra v. Ecua Rest. Inc.*, No. 17-CV-3316 (CLP) (PKC), 2018 WL 1136039, at *20 (E.D.N.Y. Jan. 31, 2018), *report and recommendation adopted as modified in other respects*, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018); *see also Khotovitskaya v. Shimunov*, No. 18-CV-7303 (NGG) (CLP), 2021 WL 868781, at *2 (E.D.N.Y. Mar. 9, 2021) ("Courts are unable to award costs for translation services without supporting documentation.") (citation omitted).[10]

In this case, Troy Law has not submitted any documentation to verify the costs that it incurred in pursuing this litigation. Courts in this district regularly award costs only for filing fees when the parties seeking costs submit no supporting documents. *See, e.g.*, *Piedra*, 2018 WL 1135652, at *1 (adopting recommendation to award only $400 of costs for filing fee); *Ryeco, LLC v. Legend Produce Inc.*, No. 20-CV-4044 (FB) (RER), 2021 WL 2742873, at *11 (E.D.N.Y. May 24, 2021) (same), *report and recommendation adopted*, 2021 WL 2741605 (E.D.N.Y. July 1, 2021). In fact, Troy Law has been denied a significant portion of the costs it requested for exactly this type of oversight in other cases, *see Chen v. Marvel Food Servs., LLC*, No. 15-CV-6206 (JMA) (AYS), 2022 WL 4226098, at *5 (E.D.N.Y. Sept. 9, 2022) (denying over half of Troy Law's

[10] Although Ms. Troy reportedly provided translation services in this case, because Troy Law sought to obtain attorneys' fees for that work, the Court does not consider that request to be one for costs. The Court is not going to reward Troy Law's effort to improperly seek attorneys' fees for non-legal work, by recategorizing this amount as costs. Troy Law made a deliberate decision to proceed in this manner and now recovers nothing as a consequence.

requested costs because the firm "fail[ed] to provide any supporting documentation for [its] stated expenses"), yet it has still made no effort to provide supporting documentation for its fee application in this case. Therefore, the Court awards Plaintiff only $400 in costs for the filing fee.

## CONCLUSION

For the reasons stated above, Plaintiff is entitled to **$20,856.60** in attorneys' fees and **$400** in costs, for a total judgement against Defendant in the amount of **$21,256.60**.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 23, 2023
Brooklyn, New York